LAWRENCE JO JO SCOTT *v.* STATE OF ARKANSAS

CR 73-14                                         492 S.W. 2d 902

Opinion delivered April 16, 1973

*Louis W. Rosteck,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gene O'Daniel,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. This is the second appeal in this case. The first is reported at 251 Ark.

918, 475 S.W. 2d 699. There we held that the evidence then before the court was sufficient to sustain a conviction for rape. Upon retrial, the appellant was again convicted of rape without the testimony relating to an incriminating remark by appellant, which we found to have been improperly admitted in the first trial.

On this appeal, appellant again contends that there was insufficient evidence that he had sexual intercourse with the two-year-old child alleged to have been the victim of the crime. The evidence is not materially different, with the exception above noted, from that given at the first trial and outlined in the opinion on the first appeal. We then rejected the same arguments now advanced on behalf of appellant, i.e., that sexual intercourse as defined in the present rape statute [Ark. Stat. Ann. § 41-3402 (Repl. 1964)] means more than the slight penetration held sufficient to constitute the crime under previous statutes. Appellant argues that the testimony of Dr. Porter, who examined the little girl after the events leading up to the charge against appellant, clearly shows that there was no actual penetration, therefore there could have been no rape. In the previous trial, Dr. Porter's statement was admitted into evidence by agreement. In this trial he testified in person. While the doctor stated, as emphasized by appellant, that there had been no actual penetration because the child's vagina was too small to have admitted either a penis or a finger, he qualified this statement by saying that the penetration was sufficient to tear the hymen and that her vagina was torn almost into the rectum. Thus, there was no material variation in the physician's testimony in the two cases.

Appellant's remaining point for reversal is another contention made and rejected on the first appeal, i.e., prejudice by the state's failure to produce tangible evidence. Appellant argues that we should reconsider this matter because there is a discrepancy between the testimony of former Deputy Sheriff Tom Womack (an investigator with the prosecuting attorney's office at the time of the second trial) in this trial and his testimony at the first trial. In this connection, he points out that Womack,

when asked on the first trial if there was anything unusual about the shorts removed from Scott shortly after he was taken into custody, responded only that they had blood stains in front, but, on the second trial added, when asked about the appearance of Scott's body at the time, that there was a large amount of blood on the inside of the shorts and there appeared to be blood stains on Scott's penis. He further points out that, on the second trial, Womack said that the blood stains on Scott's clothing and person were bright red, some nine hours after the alleged incident. Appellant also contrasts Womack's testimony with that of Deputy Sheriff Little at the first trial that there was no blood visible on Scott's outer clothing at the time of his arrest, and that the dried blood on Scott's undershorts was "clear, you know, not red blood like—maybe two or three hours old." Little did not testify at the second trial. Appellant also contends that neither of the officers had previously testified about observing blood on the inside of Scott's shorts when they were removed. Scott further argues that Womack was inconsistent in his testimony at the second trial in that, in response to one question, he said that the shorts were white in color and later described them as white with brown dots. In arguing the prejudicial effect of failure of the state to produce the shorts, appellant also points out that the officer described the shorts as "boxer-type" while appellant's aunt said they were jockey shorts. All these matters were for consideration by the jury in evaluating the credibility of the witness and the weight to be given to his testimony. It was the function of the jury to resolve any inconsistencies and contradictions in the testimony presented at the second trial. *Davis* v. *State*, 246 Ark. 838, 440 S.W.2d 244, cert. denied, 403 U.S. 954, 91 S. Ct. 2273, 29 L. Ed. 2d 865 (1971). Doubtless they were emphasized by appellant's attorney in closing arguments, at least as forcefully as they are stated here. We are not convinced that our holding was erroneous on the first appeal.

Actually, it would be difficult to find a case where the rule that the "law of the case" governs on the second appeal should be more readily applied. See *Mode* v. *State*, 234 Ark. 46, 350 S.W.2d 675.

The judgment is affirmed.