Willie KING, Jr. *v.* STATE of Arkansas

CR 92-1016            847 S.W.2d 37

Supreme Court of Arkansas
Opinion delivered February 15, 1993

*Vickery, Landers & Lightfoot, P.A.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Willie King, Jr., was convicted of capital murder and sentenced to life without parole. On appeal, he makes three arguments, each of which concerns the denial of a fair trial. None of his arguments has merit, however, and we affirm.

King was convicted of the manual strangulation of a female victim who was last seen with the appellant on the evening of March 22, 1991. Three days later, her body was discovered in McKinney Park in El Dorado.

King, whose face, neck and chest exhibited numerous scratches, was arrested and charged with first-degree murder. That count was changed to capital murder on August 29, 1991, and the death penalty was requested. Several pretrial motions were filed, including a motion in limine to prevent the state from referring to any of the appellant's prior criminal arrests and charges. The state agreed not to do that. Also, a motion was filed to direct a non-capital sentence because no applicable aggravating circumstance existed at the time of the murder that warranted imposition of the death penalty. That motion was denied.

The trial in this cause occurred over five days. The jury was informed at the outset that this was a capital murder case and that death and life without parole were the appropriate punishments. A principal witness for the state was Sylvance Wright, who testified that he was in jail with King and that King told him that he had been with the victim on the night she was killed, that he had threatened to tell her boyfriend that she was seeing someone else if she did not have sex with him, and that he had killed her when she refused to have sex with him. Wright further testified that King said he did not intend to kill the victim but showed no remorse for having done so.

The jury returned a verdict of guilty and following the penalty phase assessed punishment of life without parole. The jury did find an aggravating circumstance — that the murder was perpetrated in a cruel and depraved manner — but refused to conclude that this warranted capital punishment. King filed a motion for a new trial on grounds that the jury was tainted due to consideration of the death penalty and, further, that he was not afforded a fair trial. That motion was denied, and he appeals from that order.

We begin by noting that the appellant's abstract is flagrantly deficient and ordinarily would be grounds for Rule 9 sanctions. No rulings or orders of the circuit court are abstracted; nor is the instruction on aggravating circumstances that forms the basis for one of the issues on appeal or the colloquy between the prosecutor and Sylvance Wright that gives rise to King's claim of prejudice and grounds for a mistrial. The appellant also fails to abstract other objections decided adversely to him as required by our Supreme Court Rule 11 (f) when a life sentence is involved. What salvages this appeal is the state's supplemental abstract and the fact that this is a capital case with a sentence of life without parole which all but necessitates review. We observe, however, that the process is not well served when a case of this magnitude is presented in violation of the minimal requirements for abstracting required by our Rules.

Turning to the merits, King first contends that a death-qualified jury was inappropriate because the aggravating circumstance found by the jury was not in effect on the date of the murder and, thus, there was no basis for capital punishment.

Hence, King argues, the circuit court erred in refusing to direct a sentence of life without parole.

King is correct that the aggravating circumstance referring to commission of the murder "in an especially heinous, atrocious, or cruel manner", codified at Ark. Code Ann. § 5-4-604(8) (1987), was struck down by this court in 1988 for vagueness. *Wilson* v. *State*, 295 Ark. 682, 751 S.W.2d 734, *modified* 295 Ark. 692A, 752 S.W.2d 762 (1988). He is further correct that Act 683 of 1991, also codified at Ark. Code Ann. § 5-4-604(8) (Supp. 1991), was enacted after the date of the murder and provided as an aggravating circumstance murder perpetrated in an especially cruel and depraved manner. After Act 683 was in effect, the state amended the charge in this case from first-degree murder to capital murder. Accordingly, he urges that an *ex post facto* issue exists concerning the application of an aggravating circumstance which became effective after the murder date.

Nevertheless, King did not receive the death penalty, and we have held that an appellant has no standing to contest the constitutionality of the death penalty when that person receives a lesser sentence. *See Ashley* v. *State*, 310 Ark. 575, 840 S.W.2d 793 (1992); *Smith* v. *State*, 306 Ark. 483, 815 S.W.2d 922 (1991); *Weaver* v. *State*, 305 Ark. 180, 806 S.W.2d 615 (1991). Those cases are analogous to the case at hand. The fact that the jury was death-qualified, that death was considered throughout the trial as a possible sentence, and that the jury was instructed on an aggravating circumstance that was not in effect at the time of the killing is of no moment when death is not the penalty assessed.

What the appellant is contending, in essence, is that the trial was tainted generally by the fact that death was considered when it should not have been because of an inapplicable aggravating circumstance. It is incumbent on the appellant, however, to demonstrate a prejudicial impact. *Greer* v. *State*, 310 Ark. 522, 837 S.W.2d 884 (1992). Here, the prejudice that may have resulted is difficult to gauge under such circumstances and places us squarely in the realm of speculation. We will not speculate on what prejudice, if any, occurred from the fact that the death penalty was mentioned and considered at the trial though not assessed. Without a more precise objection by King or a showing on his part as to how he was harmed, the circuit court had no basis

to grant a new trial; nor do we have a foundation for reversal. *See Terry* v. *State,* 309 Ark. 64, 826 S.W.2d 817 (1992).

■ Moreover, the United States Supreme Court and this court have held that the mere fact that a jury is death-qualified but a lesser sentence is imposed is not sufficient prejudice to warrant a reversal. *Lockhart* v. *McCree,* 476 U.S. 162 (1986); *Van Pelt* v. *State,* 306 Ark. 624, 816 S.W.2d 607 (1991). In sum, the circuit court did not err in denying a new trial on this point.

For his second issue, King maintains that the jury panel was expanded from some fifty-five members to almost double that size, and that this was not accomplished by giving five-days' notice as contemplated under Ark. Code Ann. § 16-32-106(c)(1) (Supp. 1991). This lapse in procedure, under the theory propounded, denied the appellant an opportunity to evaluate the qualifications of the new members and may have eliminated a cross-section of the community under our holding in *Kitchen* v. *State,* 264 Ark. 579, 572 S.W.2d 839 (1978). This argument, too, is meritless.

■■ The circuit court found that the jury that heard Kings' case was selected from the original venire, which King had ample time to research. There is nothing before us to suggest that this finding was in error. Thus, no prejudice due to lack of research time or abbreviated notice could have resulted. We note additionally in this respect that § 16-32-106(c)(1) does not require five-days' notice to jurors. It provides that when jurors are mailed a notice to serve, they are to confirm with the sheriff that it was received. If no confirmation is given, the sheriff follows up with a telephone call to the non-responsive panel member not later than five days before trial. In this instance, the additional jurors apparently were not contacted by mail, but by telephone which was a permissible alternative under the statute. There was no breach of statutory procedure under these circumstances.

Lastly, the appellant argues that the circuit court erred in refusing to grant a mistrial following this colloquy:

DEPUTY PROSECUTING ATTORNEY: Okay. And did the Defendant discuss with you, what he was in jail for?

WITNESS: Yes, ma'am.

DEPUTY PROSECUTING ATTORNEY: What did he tell you?

WITNESS: Well, we woke up one morning and right after breakfast and we started talking. And the conversation led to about women and he said about a lot of this and that and then he said, "Well, just like the case I just beat." He said. . .

DEFENSE COUNSEL: Objection, Your Honor. May we approach?

Defense then objected, moved to strike, and moved for a mistrial on grounds that the response violated the order in limine forbidding comment on King's prior arrests and charges. The circuit court denied the mistrial motion and then asked if defense counsel wanted an instruction to the jury. Defense counsel answered: "Yes. At the very least. Note my objection." The prosecutor then asked if she should take the witness aside and remind the witness not to refer to King's past conduct. Defense counsel responded: "No. I simply ask that the objection at least be sustained. I do move for a mistrial."

The court then sustained the objection, denied the mistrial, and admonished the jury with the following:

> Ladies and gentlemen of the jury, it's the instruction of the Court that you disregard the last response of this witness, if you heard it. If you didn't hear it, then I suppose there's nothing for you to disregard. But, you are instructed that I have sustained an objection to that response. It should be disregarded and not considered at all. Put it out of your minds completely as you listen to the evidence and eventually as you deliberate with respect to this case. You may proceed.

■ We have held that a mistrial is a drastic remedy and one that lies within the discretion of the trial court. *Green* v. *State*, 310 Ark. 16, 832 S.W.2d 494 (1992); *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992). Moreover, we have held that admonitions to the jury may be sufficient to cure statements by a witness, not elicited in bad faith, relating to other criminal activity of the accused. *See, e.g., Strawhacker*, v. *State*, 304 Ark. 726, 804 S.W.2d 720 (1991); *Ronning* v. *State*, 295 Ark. 228, 748

S.W.2d 633 (1988).

In the case before us, defense counsel was somewhat ambivalent about the relief he wanted. On the one hand, he requested a mistrial. But on the other, he wanted his objection sustained and was agreeable to an admonition to the jury "at the very least." We have stated that a mistrial motion asserts that the error is beyond repair and cannot be corrected by any curative relief, while an objection to evidence does not carry with it the same gravity. *Sullinger* v. *State*, 310 Ark. 690, 840 S.W.2d 747 (1992). A curative instruction is an acknowledged means of curing error. *Id.* Defense counsel got part of the relief he requested.

There is no question but that the statement about "beating" a prior case had the potential to harm the appellant. And yet, the particulars of what was meant by that statement were left to the jurors' imaginations. The circuit court told them in no uncertain terms to disregard the comment. We cannot say with any certainty that the admonition did not have the desired effect or that the circuit court abused its discretion in denying a mistrial.

The record has been examined in accordance with Ark. Sup. Ct. R. 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.